UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERROLD DAVIS,<br><br>    Plaintiff,<br><br>v.<br><br>TARRY WILLIAMS, *ET AL.*,<br><br>    Defendants. | Case No. 15-cv-8130<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jerrold Davis ("Plaintiff"), an inmate at Stateville Correctional Center ("Stateville"), alleges that Defendants, officials at Stateville and the Illinois Department of Corrections, violated his Eighth Amendment rights by subjecting him to cruel and unusual prison conditions. Second Am. Compl. [22]. On August 3, 2016, Defendants filed a motion to dismiss Plaintiff's case for failure to state a claim. Defs.' Mot. Dismiss [24]. Defendants argue that, viewed objectively, Plaintiff's allegations are not sufficiently serious to establish a constitutional violation. Mem. Supp. Defs.' Mot. Dismiss [25]. For the reasons explained below, Defendants' motion is denied.

I. **Background**

Plaintiff has been an inmate at Stateville Correctional Center since 2006. Second Am. Compl. [22] ¶ 3, Ex. B. Plaintiff alleges that during his incarceration, Defendants have subjected him to deplorable living conditions that have exacerbated his asthma, increased his risk of bone cancer and fungal diseases, and caused leukemia. *Id.* ¶¶ 9, 21, 30, 36.

Specifically, Plaintiff first alleges that Stateville's water supply includes excessive amounts of "microbiotic," "inorganic," and "radioactive" contaminants; "pesticides and herbicides"; and "organic chemicals." *Id*. ¶ 20. Plaintiff further claims that the water supply contains radium, alpha emitters, copper, and lead. *Id*. ¶¶ 21-24. Plaintiff alleges that, due to these impurities, the water "is often dark brown" and "malodorous." *Id*. ¶ 25. He asserts that extended radium exposure may cause bone cancer, and that the radium and alpha emitters are the cause and aggravators of his leukemia. *Id*. ¶¶ 9, 21, 23.

Plaintiff next alleges that Defendants "have allowed numerous birds to fly freely" throughout the prison's living units and cafeteria. *Id*. ¶ 27. Plaintiff claims that these birds cause communicable and fungal diseases such as histoplasmosis, psittacosis, alveolitis, avian influenza, and campylobacteriosis. *Id*. ¶¶ 28-30. Additionally, Plaintiff claims that mice "roam in and out of cells regularly" and that there "are massive infestations of roaches and spiders" in the inmates' cells and shower area. *Id*. ¶ 31. Plaintiff alleges that the roach infestation resulted in two roaches being removed from his right ear canal on June 26, 2016, and that he continues to experience "ear pain, interference with sleep and psychological damage." *Id*. ¶ 32.

Third, Plaintiff claims that inadequate ventilation causes the air he breathes to be "thick with dust, hair, pest and bird dander, airborne viruses and wool fibers." *Id*. ¶ 35. He further alleges that the vents in numerous cells are covered with steel

plates that prevent air circulation. *Id.* ¶ 37. Plaintiff maintains that the resultant atmosphere exacerbates symptoms from his asthma. *Id.* ¶ 36.

Finally, Plaintiff alleges that his cell is unsanitary due to Defendants' refusal to distribute adequate cleaning supplies on a regular basis. *Id.* ¶ 39. Plaintiff claims he is provided disinfectant for his cell only once a week and must share the disinfectant with the twenty-nine other cells in his gallery. *Id.* ¶¶ 42-43. He alleges that, due to these deficiencies, his cell and shower area cannot be adequately cleaned and that the resultant toxic mold can result in neurological damage and cancer. *Id.* ¶¶ 46-47.

Plaintiff claims that Defendants are aware of the aforementioned conditions but have refused to adequately alleviate the problems. *Id.* ¶¶ 26, 33-34, 38, 48-49. Plaintiff argues that, combined, these conditions amount to cruel and unusual punishment and that Defendants' knowing disregard for Plaintiff's living situation constitutes deliberate indifference.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). To survive a motion to dismiss, the claim must first comply with Rule 8 of the Federal Rules of Civil Procedure by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice" of what the claim is "and the grounds upon which it

rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

Second, the complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). That is, the allegations must raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The "amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged," but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). In evaluating the complaint, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of Plaintiff. *Iqbal*, 556 U.S. at 678.

As to the alleged deprivations of Plaintiff's confinement, to sufficiently plead a claim under the Eighth Amendment, Plaintiff must demonstrate that: (1) the alleged condition, viewed objectively, is sufficiently serious; and (2) Defendants acted with subjective deliberate indifference towards the condition. *Board v.*

*Farnham,* 394 F.3d 469, 479-80 (7th Cir. 2005); *Delaney v. DeTella,* 256 F.3d 679, 683 (7th Cir. 2001).

Regarding the first element, prison conditions may be "harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment." *Dixon v. Godinez,* 114 F.3d 640, 642 (7th Cir. 1997) (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). The Eighth Amendment "does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Carroll v. DeTella,* 255 F.3d 470, 472-73 (7th Cir. 2001). Rather, "extreme deprivations are required to make out a conditions-of-confinement claim." *Turner v. Miller,* 301 F.3d 599, 603 (7th Cir. 2002). Plaintiff must show that the alleged deprivations, viewed objectively, are so serious as to amount to the denial of "the minimal civilized measure of life's necessities." *Farmer,* 511 U.S. at 834 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)).

Regarding the second element, "deliberate indifference" means "subjective awareness." *Riccardo v. Rausch,* 375 F.3d 521, 526 (7th Cir. 2004). The relevant inquiry is whether Defendants "actually *knew* about [Plaintiff's] condition, not whether a reasonable official should have known." *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (emphasis added). Deliberate indifference "is more than negligence and approaches intentional wrongdoing." *Johnson v. Snyder,* 444 F.3d 579, 585 (7th Cir. 2006) (quoting *Collignon v. Milwaukee County,* 163 F.3d 982, 988 (7th Cir. 1998)). Plaintiff must allege that Defendants "acted with the equivalent of criminal

5

recklessness." *Grieveson v. Anderson,* 538 F.3d 763, 777 (7th Cir. 2008) (quoting *Borello v. Allison,* 446 F.3d 742, 747 (7th Cir. 2006)). That is, "a plaintiff must establish that the official knew of the risk (or a high probability of the risk) and did nothing." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

## III. Discussion

Plaintiff's Second Amended Complaint alleges that, considered in their totality, Stateville's contaminated water, pest infestation, inadequate ventilation, and insufficient cleaning supplies amount to an Eight Amendment violation. Second Am. Compl. [22] ¶ 17. Accepting Plaintiff's allegations as true and drawing all reasonable inferences therefrom, Plaintiff sufficiently states a claim upon which relief may be granted.[1]

### A. Contaminated Water

While a prisoner "is not constitutionally entitled to perfectly filtered water," a "denial of drinkable water, even for a few days, may be actionable." *Riley-el v. Illinois*, No. 13-CV-5768, 2014 WL 3396531, at *2-*3 (N.D. Ill. July 10, 2014) (citing *Atkins v. City of Chicago,* 631 F.3d 823, 830 (7th Cir. 2011)). Plaintiff's claims about Stateville's water supply are not novel, nor are Defendants' proffered critiques. In *Jones v. Hardy*, for example, the plaintiff brought an Eighth Amendment claim on the grounds that Stateville water "was contaminated with radium and rust, prison employees did not drink it, and Plaintiff experienced diarrhea and nausea as a

---

[1] Defendants' motion focuses solely upon the objective seriousness of Plaintiff's alleged living conditions; it does not challenge the sufficiency of Plaintiff's claim as it relates to deliberate indifference. *See* Mem. Supp. Defs.' Mot. Dismiss [25]. Therefore, the second prong of the Eighth Amendment analysis will not be further discussed.

6

result." No. 11-CV-699, 2012 WL 1133797, at *1 (N.D. Ill. Apr. 4, 2012). The plaintiff further alleged that the water, which possessed a "smelly odor and rust color," caused stomach discomfort that would "double him over in pain," induced "a lot of joint pain," and possessed high levels of radium "known to cause cancer." *Jones*, No. 11-CV-699, ECF No. 13 at 14, 18. As in the present case, the defendants moved to dismiss, arguing that the "conditions were not so deficient to amount to a constitutional violation." *Jones*, 2012 WL 1133797, at *2. Rejecting the defendant's claim, the court found that "[c]ontrary to the Defendant's contention, the Court cannot determine the severity of the conditions at this stage of this case." *Id.* at *3. According to the court, the plaintiff's complaint "sufficiently plead[ed] the seriousness of" the contaminated water to state an Eighth Amendment violation.

Similarly, in *Riley-el v. Illinois*, the plaintiff alleged that Stateville water was "tainted by radium," was "brown in color," and "smelled of sewage or rotten eggs." 2014 WL 3396531, at *2. The plaintiff further claimed that "because of the contaminated water, he developed headaches, stomach pains, [and] diarrhea," and that "exposure to the contaminated water could lead to cancer." *Id.* On these allegations, the court denied a motion to dismiss for failure to state a claim. The defendants, like Defendants here, argued that dismissal was warranted because the plaintiff presented "no evidence connecting his stomach pains and diarrhea to the alleged tainted water." *Id.* at *3; *see* Defs.' Reply [31] 3 ("Plaintiff . . . lacks any factual support whatsoever for these allegations."). The court held, however, that there "is no requirement at this stage of litigation that Plaintiff provide evidence,

7

just that he state a plausible claim." *Riley-el*, 2014 WL 3396531, at *3. The same reasoning applies here.

Finally, the plaintiff in *Truidalle v. Taylor* alleged that Stateville water was polluted "with dangerous toxins and dirty and filthy substances," was "routinely rusty, brown, and malodorous," and "smell[ed] as if it ha[d] been over-treated with chlorine." No. 11-CV-1170, 2011 WL 6780690, at *2 (N.D. Ill. Dec. 23, 2011) (internal quotations omitted). The plaintiff further claimed that the water "exceeded maximum allowable levels of radium" linked to bone cancer and that "[t]he prison, along with towns in the Joliet area, issue[d] occasional 'boil orders.'" *Id*. The plaintiff alleged that consuming the water caused "a burning sensation," diarrhea, stomach pains, "a lump on his scrotum," and "cysts and moles growing on his body." *Id*. The plaintiff also allegedly suffered from "a stroke and a heart attack," "gastro-intestinal issues," "acid reflux disease," and "high blood pressure" while incarcerated. *Id*. Denying the defendants' motion to dismiss, the court held that such allegations were "sufficiently serious" to allege a constitutional claim. *Id*. at *3-*5.

Plaintiff's water allegations, as those in *Jones*, *Riley-el*, and *Truidalle*, sufficiently raise a plausible cause of action. Defendant's reliance on *Carrol v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001) is misplaced. In *Carrol*, the Seventh Circuit affirmed summary judgment in favor of defendants after an Illinois prison inmate claimed that his drinking water was contaminated with radium and lead. *Id*. at 471. As court noted in *Truidalle*, however, *Carrol* was decided at the

summary judgment stage "on the basis of a more fully developed record." 2011 WL 6780690, at *4; *see also White v. Monohan*, 326 F. App'x 385, 387 (7th Cir. 2009) (distinguishing *Carrol* on same grounds and reversing dismissal of Eighth Amendment claim for contaminated water). Moreover, the only injury asserted in *Carrol* was "possible" bladder cancer as opposed to the concrete injury—leukemia— Plaintiff claims to have sustained here. 99-CV-2443, 2000 WL 20711, at *6 (N.D. Ill. Jan. 10, 2000); *see also Truidalle*, 2011 WL 6780690, at *4 (distinguishing *Carrol* on grounds that it merely "involved fear of heightened cancer risk"). *Carrol*, therefore, "does not necessarily preclude the instant case" at this juncture. *Truidalle*, 2011 WL 6780690, at *4.

### B. Pest Infestation

A "prolonged pest infestation, specifically a significant infestation of cockroaches and mice," may be considered a deprivation sufficient to constitute a constitutional violation. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir.1996)). The Court must consider "how extensive the infestation of a prisoner's cell is, what the infesting pests are, what odors or bites or risk of disease they create, what particular psychological sensitivities the prisoner was known to have . . . and how long the infestation continues." *Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012).

In *Antonelli*, the prisoner plaintiff alleged that cockroaches and mice were "everywhere," "crawling on his body," "constantly awakening him," and "causing the environment to be unsanitary." 81 F.3d at 1431. The plaintiff further alleged that

9

the prison received only two pest-control sprayings over sixteen months. *Id*. The district court dismissed the plaintiff's claim on the grounds that, given the periodic sprayings, it failed to sufficiently plead deliberate indifference on the part of prison personnel. *Id*. The Seventh Circuit reversed, holding that two sprayings in sixteen months "may have been seriously insufficient" and did not "necessarily show that the defendants were less than deliberately indifferent." *Id*. The court stated that, as alleged, the pest infestation constituted "a prolonged deprivation seriously impacting on [the plaintiff's] health" that "should not have been dismissed." *Id*.

Twelve years later, in *Sain*, the Seventh Circuit distinguished its *Antonelli* holding. In *Sain*, a civilly committed plaintiff alleged that his cell "was infested with roaches." *Id*. at 889. Specifically, the plaintiff claimed that, during his approximately six-year confinement, he "saw roaches crawling around his cell," and "coming from under his bed and out of cracks in the wall and sink," and that "he was bitten by a cockroach twice." *Id*. at 889, 894. The plaintiff conceded, however, that an exterminator visited his cell "every month or month and a half" or in specific response to the plaintiff's complaints. *Id*. at 894. The court held that, on these facts, while the conditions of the plaintiff's detention "were certainly unpleasant," they did not rise to the level of a constitutional violation. *Id*.

Since *Sain,* courts in this circuit have compared the particular circumstances of an alleged pest infestation with those presented in *Antonelli* and *Sain*. *Compare, e.g., Gray v. Hardy,* 826 F.3d 1000, 1007 (7th Cir. 2016) (finding pest infestation resulting in exacerbated asthma, "skin breakouts," and psychological harm

10

sufficiently serious); *White v. Monahan*, No. 07-CV-437, 2013 WL 587511, at *7-*9 (N.D. Ill. Feb. 14, 2013) (finding five-year exposure to roaches, mice, bees, and wasps that resulted in near-daily insect bites sufficiently serious) *with Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (finding allegations of "mere presence of laundry list of pests" without contact with plaintiff's person or property or claims of physical, psychological, or property damage not sufficiently serious); *Allen v. Engelson*, No. 14-CV-9398, 2016 WL 4245514, at *4-*5 (N.D. Ill. Aug. 11, 2016) (finding six-day exposure to mice and birds where mouse merely crossed inmate's mattress and bird droppings landed on bed sheet not sufficiently serious).

In *Lyons v. Vergara*—a recent decision from this District—the plaintiff alleged that his cell was "virtually overrun with pests," including "cockroaches, spiders, earwigs, and mice." No. 14-CV-9564, 2016 WL 4493455, at *8 (N.D. Ill. Aug. 26, 2016). The plaintiff further contended that he "witnessed his cellmate having to have an insect removed from his ear canal," and that as a result, he suffered from insomnia "due to his great fear of experiencing the same trauma." *Id*. Both the plaintiff and his cellmate "purportedly slept with tissue in their ears to ward off bugs." *Id*. The court found that these facts "could support a finding that the infestation problem was 'serious,' for purposes of constitutional analysis." *Id*.

Here, Plaintiff's allegations mirror those presented in *Lyons*. Moreover, Plaintiff's claims cover approximately a ten-year period—seven-and-a-half times longer than the sixteen-month period presented in *Antonelli*, and over one-and-a-half times longer than the six-year confinement in *Sain*. Additionally, contrary to

11

*Sain*, where no evidence of physical harm was presented, Plaintiff alleges that two cockroaches were physically removed from his right ear canal. As in *Lyons,* Plaintiff alleges that this physical invasion has resulted in "psychological damage" and "interference with sleep." Second Am. Compl. [22] ¶32. Taking Plaintiff's allegations as true, as we must, Plaintiff has pleaded sufficiently serious conditions to survive a motion to dismiss.

### C. Inadequate Ventilation

The Seventh Circuit has "continually espoused a prisoner's right to adequate ventilation." *Bd. v. Farnham*, 394 F.3d 469, 487 (7th Cir. 2005); *Martin v. Tyson*, 845 F.2d 1451, 1456 (7th Cir. 1988); *Shelby County v. Westlake*, 798 F.2d 1085, 1087 (7th Cir. 1986*).* When the plaintiff alleges "direct physical manifestation of the harm caused by the poor ventilation, as well as the quite likely possibility for future health problems" he has satisfied the objective prong of an Eighth Amendment violation. *Farnha*m, 394 F.3d at 486.

In *Farnham*, state prison inmates alleged that their jail's heating and air flow system "issued a constant flow of black fiberglass dust" that caused frequent nosebleeds and exacerbated one of the plaintiff's pre-existing asthma. *Id*. at 473, 475. Evidence indicated that the jail vents were vacuumed only once during the alleged time period, and that "the jail was dusty and dirty all the time." *Id*. at 474. On appeal, the Seventh Circuit affirmed denial of the defendants' motion for summary judgment and held that such allegations were "sufficient to constitute an objectively serious harm" under the Eighth Amendment. *Id*. at 486.

12

Subsequently, in *Myrick v. Anglin*, the Seventh Circuit applied *Farnham* in the context of a motion to dismiss. 496 F. App'x 670, 675 (7th Cir. 2012). The plaintiff, an eight-year inmate, alleged unconstitutional conditions of confinement because, *inter alia*, he was "exposed to dust." *Id.* at 673-74. Unlike *Farnham*, however, the plaintiff did not allege severe physical manifestations, and only claimed that the dust "caused him pain and difficulty breathing." *Id.* at 675. Nevertheless, the court, citing *Farnham*, reversed the district court's dismissal of the plaintiff's complaint. *Id.* The court affirmed that "[c]omplaints of inadequate ventilation may state a claim for relief" and held that the plaintiff's claim was "not so implausible that the district court could dismiss it at the pleading stage." *Id.*

Finally, in *Ames v. Randle*—also from this District—the plaintiff alleged that "the vent intended to allow fresh air to flow into his cell [was] covered with a steel plate," "the exhaust fans [were] not used," "and most windows [were] screwed shut." 933 F. Supp. 2d 1028, 1031 (N.D. Ill. 2013). The plaintiff claimed that the lack of ventilation caused air quality to be poor and air temperature to routinely exceed 90 degrees, which consequently undermined his health. *Id.* Specifically, the plaintiff claimed that he suffered from "fungal infections," "an infection in the lining of his heart," and "frequent respiratory infections." *Id.* at 1035. The defendants argued that the air was "not so objectively harsh as to give rise to a claim of cruel and unusual punishment." *Id.* The court disagreed, finding "little difficulty in concluding that the alleged conditions [were] plainly serious enough to satisfy the first prong of the two-step inquiry." *Id.*

13

Pursuant to *Farnham, Myrick*, and *Ames*, at this stage, Plaintiff raises a plausible Eighth Amendment claim. Plaintiff not only describes air quality (or lack thereof) comparable to the aforementioned cases, but also alleges a direct physical manifestation of the harm caused by the poor ventilation—aggravation of his asthma. Defendants' reference to *Dixon v Godinez*, 114 F.3d 640 (7th Cir. 1997), is inapposite. Although *Dixon* found a plaintiff's inadequate ventilation claim meritless due to a lack of "backing from medical or scientific sources," *id*. at 645, "Defendants ignore the fact that *Dixon* was decided on a motion for summary judgment." *Ames*, 933 F. Supp. 2d at 1036. Contrary to Defendants' assertions, whether evidence supports Plaintiff's allegations "is not an issue to be decided on a motion to dismiss, and is left for another day." *Id*.

**D.     Lack Of Adequate Cleaning Supplies**

Unhygienic conditions, "when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief." *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) (reversing dismissal where jail failed to furnish cleaning supplies and conditions of detention included overcrowded cells, broken windows, cracked toilets, leaking water, extensive rust, mold, and spider webs); *Vinning–El v. Long*, 482 F.3d 923, 924-25 (7th Cir. 2007) (reversing summary judgment where prisoner was held for six days without sanitation items in cell contaminated with human waste and non-functioning sink and toilet); *Johnson v. Pelker,* 891 F.2d 136, 139-40 (7th Cir. 1989)

(reversing summary judgment where prisoner was denied cleaning supplies and confined for three days to cell smeared with human waste and no running water).

As the above cases indicate, the Seventh Circuit has recognized Eighth Amendment violations for deprivations of cleaning supplies "only in extreme circumstances." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Plaintiff, however, "is entitled to have his complaint evaluated as a whole," particularly where, as here, he combines his allegations into a single claim. *Id*. Some "conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Id*. (quoting Gillis *v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Similarly, an "adverse condition of confinement, if endured over a significant time, can become an Eighth Amendment violation even if it would not be impermissible if it were only a short-term problem." *Id*.

In *Gray*, the plaintiff, a fifteen-year Stateville inmate, claimed to see cockroaches "at least every other day, and sometimes as often as every few minutes." *Id*. at 1003-04. He further alleged that mice ate his food, birds left their droppings on the floors and walls, and that the cell house was infested with insects. *Id*. at 1004. Although prison officials attempted to remove the birds every three months, utilized a pest control company once a month, and washed the floors every other day, the plaintiff maintained that the dander and feces remained in difficult-to-reach places. *Id*. The plaintiff further claimed that the prison's regulation of cleaning supplies contributed to the unsanitary conditions. Specifically, the plaintiff alleged that he received only one towel, which was replaced every eight

15

months, and did not have access to mops, brooms, or buckets. *Id*. He also asserted that, although he was given watered-down disinfectant spray and permitted to purchase soap or detergent at the commissary, he was not permitted to store such chemicals in his cell. *Id*. The plaintiff alleged that, combined, the conditions of his confinement exacerbated his asthma and caused skin rashes. *Id*.

The district court granted summary judgment to the defendant, finding that "none of the conditions Gray described were so bad that they violated the Eighth Amendment." The Seventh Circuit reversed. The court acknowledged that the plaintiff's claims of pest infestation or lack adequate cleaning supplies, standing alone, "may not describe a sufficiently serious condition to meet the first element of the Eighth Amendment test." *Id*. at 1005. Taken together, however, "the myriad infestations and his lack of access to adequate cleaning supplies" were sufficient to support a finding that the prison "deprived [the plaintiff] of the basic human need of rudimentary sanitation in violation of the Eighth Amendment." *Id*.

Plaintiff's allegations warrant similar treatment here, particularly at this stage of the proceedings. Viewing Plaintiff's cleaning supplies allegations in conjunction with his other accusations discussed *supra*, Plaintiff has pleaded sufficiently serious hygienic conditions to survive a motion to dismiss.

## IV. Conclusion

Defendant's Motion to Dismiss [24] is denied.  Defendants are directed to file an answer or other responsive pleading within twenty-one days of the date of this order.

Date:  October 26, 2016

ENTERED:

_____
John Robert Blakey
United States District Judge